UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 20-1576 JGB (SPx)** | Date | April 21, 2022 |
|---|---|---|---|
| Title | ***Andres Campos, et al. v. Converse, Inc., et al.*** | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**    **Order (1) GRANTING Plaintiff's Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 23); and (2) VACATING the April 25, 2022 Hearing (IN CHAMBERS)**

Before the Court is Plaintiff Andres Campos's motion for preliminary approval of class action settlement. ("Motion," Dkt. No. 23.) The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of the Motion, the Court GRANTS the Motion and VACATES the April 25, 2022 hearing.

## I.   BACKGROUND

On May 29, 2020, Mr. Campos, individually on behalf of himself and other persons similarly situated, filed a class action complaint against Defendant Converse, Inc. ("Converse") and Does 1 through 10 (collectively, "Defendants") in the Superior Court of California for the County of San Bernardino. ("Complaint," Dkt. No. 1-1.) The Complaint alleges five causes of action under California law: (1) failure to pay compensation due; (2) meal period violations; (3) rest period violations; (4) failure to pay wages timely upon termination; and (5) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17203. (Id.)

On July 31, 2020, Converse answered. ("Answer," Dkt. No. 1-3.) On August 7, 2020, Converse removed the action. ("Notice of Removal," Dkt. No. 1.)

On February 17, 2022, Mr. Campos filed the instant Motion. In support, he attached the following documents:

- Declaration of Peter R. Dion-Kindem ("Dion-Kindem Declaration," Dkt. No. 23-2), with attached exhibits;
- Settlement Agreement ("Agreement," Dion-Kindem Decl., Ex. 1);
- Proposed Notice Form ("Class Notice," Agreement, Ex. 1);
- Declaration of Lonnie C. Blanchard III ("Blanchard Declaration," Dkt. No. 23-3); and
- Declaration of Andres Campos ("Campos Declaration," Dkt. No. 23-4).

On April 7, 2022, the Court ordered Mr. Campos to file supplemental briefing on how the proposed settlement classes meet the requirements of Federal Rules of Civil Procedure 23(a) and 23(b). (Dkt. No. 29.) Mr. Campos filed a supplemental memorandum on April 13, 2022. ("Supplemental Memorandum," Dkt. No. 30.)

Converse has not filed an opposition or notice of non-opposition.

## II.  LEGAL STANDARD

Approval of a class action settlement requires certification of a settlement class. La Fleur v. Med. Mgmt. Int'l, Inc., 2014 WL 2967475, at *2–3 (C.D. Cal. June 25, 2014) (internal quotation marks omitted). A court may certify a class if the plaintiff demonstrates the class meets the requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b).[1] See Fed. R. Civ. P. 23; see also Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996). Rule 23(a) contains four prerequisites to class certification: (1) the class must be so numerous that joinder is impracticable; (2) there must be questions of law or fact common to the class; (3) the claims of the class representative must be typical of the other class members; and (4) the representative parties must fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Rule 23(b) requires one of the following: (1) prosecuting the claims of class members separately would create a risk of inconsistent or prejudicial outcomes; (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive or declaratory relief benefitting the whole class is appropriate; or (3) common questions of law or fact predominate so that a class action is superior to another method of adjudication. Fed. R. Civ. P. 23(b).

For preliminary approval, the Court also "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." Fed. R. Civ. P. 23(e). "The settlement need only be potentially fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval." Acosta v. Trans Union, LLC, 243 F.R.D. 377, 386 (C.D. Cal. 2007). A court considers the following fairness factors: the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent

---

[1] All references to "Rule" in this Order refer to the Federal Rules of Civil Procedure unless otherwise noted.

of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.  Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003).

## III.  SETTLEMENT AGREEMENT

### A.  Settlement Summary

The Agreement provides for the following financial terms:

- Gross settlement amount:                                          $450,000.00
- Attorneys' fees (one-third of gross settlement):                  $150,000.00
- Costs not to exceed:                                              $15,000.00
- Service award for class representative:                           $8,500.00
- Settlement administration costs not to exceed:                    $8,000.00
- Net Settlement Amount:                                            $268,500.00

(Agreement ¶¶ 18, 30, 37; Dion-Kindem Decl. ¶¶ 19–24; Mot. at 9–10.)  This is a non-reversionary settlement.  (Dion-Kindem Decl. ¶ 13.)  Any uncashed checks will be deemed void, and the proceeds will go to Justice Gap Fund.  (Agreement ¶ 47.)

As discussed in detail below, the Agreement recognizes two classes: (1) Unpaid Wages Class, and (2) Section 203 Class.  (Id. ¶ 6.)  One-third of the net settlement amount will be distributed to the Unpaid Wages Class, and the remaining two-thirds will be distributed to the Section 203 Class.  (Mot. at 11; Dion-Kindem Decl. ¶¶ 26–29.)  If more than ten percent (10%) of Class Members timely request to opt-out, Converse will have the option, in its sole discretion, to nullify the Agreement.  (Agreement ¶ 45.)

### B.  Financial Terms

#### 1.  Settlement Class Members

The Agreement defines two classes:

Class 1: Unpaid Wages Class: All non-exempt employees employed by Converse, Inc. at any of Converse, Inc.'s two warehouse facilities in California at any time during the period beginning four years prior to the date of the filing of this action and ending on the date of preliminary approval or as otherwise determined by the Court.

Class 2: Section 203 Class: All members of any of Class 1 who, during the period beginning three years prior to the date of the filing of this action and ending on the date of preliminary approval or as otherwise determined by the Court, were either voluntarily or involuntarily separated from their employment.

(Agreement ¶ 6.)

One-third of the net settlement amount will be allocated to the Unpaid Wages Class. (Id. ¶ 46.a.) Each Unpaid Wage Class Member's gross earnings from Converse, or "Individual Class Member Payroll," will be added together for all Class Members to form the "Total Class Members' Payroll." Each Individual Class Member Payroll will be divided by the Total Class Members' Payroll to determine each Class Member's percentage figure. The percentage figure is then multiplied by the Unpaid Wage Class net settlement amount to yield each Class Member's settlement share.

Two-thirds of the net settlement amount will be allocated to the Section 203 Class. (Id. ¶ 46.b.) Each Section 203 Class Member who does not opt-out will receive a pro rata share of the net settlement amount. (Id.)

Thirty percent (30%) of each individual settlement payment will be treated as wages and subject to tax withholdings. (Id., § 8.)

## 2.  Payment and Distribution of Funds

Within thirty days of the Court's approval of the instant Motion, Converse shall provide the Settlement Administrator with the following information for each Class Member: name, last-known address, social security number (if available to Converse), and gross wages Converse paid to each Class Member during the class period. (Agreement ¶ 42.) With this data, the Settlement Administrator will calculate each Class Member's net settlement share using employee data provided by Converse and the methodology noted above. (Id. ¶ 46.) The Settlement Administrator shall provide initial calculations of each Class Member's share to Class Counsel and Converse's Counsel prior to mailing out the Class Notice form and within fifteen days after the opt-out deadline. (Id.)

Subject to final approval, a settlement fund will be established pursuant to a Court order. (Id. ¶ 40.) Within thirty days after final approval of the Agreement, Converse will deposit the gross settlement amount to the settlement fund. (Id.) The Settlement Administrator shall be responsible for preparing and issuing all checks to the Settlement Class Members, the check to the Named Plaintiff, all checks to Class Counsel, all checks for settlement administration approved by the Court, and any other payments included in the Agreement and approved by the Court. (Id. ¶ 46.) The Settlement Administrator will prepare and mail all necessary checks to the appropriate persons and entities within ten calendar days of the Effective Date. (Id. ¶¶ 15, 46.) Any check not negotiated 180 days after the date on the settlement check will be deemed void, and the proceeds will go the Justice Gap Fund. (Id. ¶ 47.)

The Settlement Administrator shall also be responsible for establishing, administering, and otherwise operating the settlement fund, including the preparation and filing of federal, state, and local tax returns. (Id. ¶ 40.)

### 3. Class Representative

The Agreement authorizes an incentive award of $8,500.00 to Mr. Campos for his efforts in bringing and prosecuting this matter and the risks he undertook. (Agreement ¶ 48; Mot. at 10.)

### 4. Settlement Administration Costs

The parties request that the Court appoint CPT Group ("CPT") as the Settlement Administrator. (Mot. at 9.) The Agreement allocates $8,000.00 to administer the settlement. (Agreement ¶ 46.c.)

### 5. Attorneys' Fees and Costs

The Agreement provides that Class Counsel will apply for $150,000.00 in attorneys' fees, an amount that represents one-third (33.33%) of the gross settlement amount, and $15,000.00 in litigation costs. (Agreement ¶ 49.) Converse agrees not to oppose this fee request. (¶¶ 49–50.)

### 6. Injunctive Relief

The Agreement does not include any injunctive relief.

### 7. Release

Upon the Effective Date, each Class Member will be deemed to have fully and finally released the following claims against Converse and other Released Parties:

> all claims, demands, obligations, actions, causes of action, liabilities, debts, promises, agreements, demands, attorney fees, costs, losses, and expenses, known or unknown, suspected or unsuspected, filed or unfiled against the Released Parties that existed during the Class Period and that were alleged or could have been alleged in and arose out of the facts alleged in the operative complaint in the Action, including, but not limited to, all claims for meal periods, meal period premium payments, unpaid wages including failure to pay minimum wages, straight time compensation, unpaid overtime and double-time, rest periods, rest period premium payments, payment for all hours worked, including off-the-clock work, and waiting time penalties. The released claims include but are not limited to claims brought under California Labor Code sections 201, 202, 203, 204, 223, 226, 226.7, 510, 512, 1194, 1194.2, 1197, 1197.1, 1198, 2802, California Business and Professions Code sections 17200-17208, and the Industrial Welfare Commission Wage Orders. Such claims include claims for wages, statutory penalties, civil penalties, or other relief under the California Labor Code and any other related state, federal or municipal law, relief from unfair competition under

California Business and Professions Code section 17200 et seq., attorney fees and costs, and interest.

(Agreement ¶ 51.)

Released Parties is defined as

Converse, Inc. and its past, present and future agents, employees, servants, officers, directors, partners, trustees, representatives, shareholders, stockholders, attorneys, parents, subsidiaries, equity sponsors, related corporations, divisions, joint venturers, assigns, predecessors, successors, service providers, insurers, consultants, subcontractors, joint employers, alleged joint employers, dual employers, alleged dual employers, co-employers, alleged co-employers, alter-egos, alleged alter-egos vendors, temporary staffing providers, affiliates, employee benefit plans and fiduciaries thereof, affiliated organizations and entities, and all persons acting under, by, through or in concert with any of them.

(Id. ¶ 24.)

In addition, Mr. Campos agrees to a general release of all claims, including a waiver under Cal. Civ. Code § 1542.  (Id. ¶ 52.)

**8.   Notice**

The Class Notice includes information about the case, the class definition, the terms of the proposed Agreement, and opt-out procedures.  (Mot. at 12; see Class Notice.)

As noted above, Converse shall provide, within thirty days of the Court's approval of the instant Motion, the Settlement Administrator with contact information for each Class Member, and gross wages Converse paid to each Class Member during the class period.  (Agreement ¶ 42.) Within fifteen calendar days after receipt of the employee data, the Settlement Administrator shall send the Class Notice to each Class Member by first class mail.  (Id. ¶ 43; see Class Notice.) For undelivered notices, the Settlement Administrator will take reasonable steps to trace the Class Member's address, such as by tracking all undelivered mail, performing additional address searches using additional address databases or equivalent means, and promptly re-mailing Class Notice to Class Members for whom new addresses were found. (Agreement ¶ 43.)  The Settlement Administrator will provide Class Counsel and Converse's counsel weekly updates on the number of undeliverable notices, the number of opt-outs, and any objections or disputes by Class Members.

The opt-out deadline for Class Members will be sixty calendar days after the Settlement Administrator's initial mailing of Class Notice.  (Id. ¶ 20.)  The Settlement Administrator shall maintain records of all opt-outs and withdrawal of opt-outs.  (Id. ¶ 44.)  Within five business days following the opt-out deadline, the Settlement Administrator shall provide Converse's counsel

with a complete list of Class Members who timely opted out, and provide counsel for the Class and Converse a copy of all objections and supporting documents received.  (Id.)  Within ten days after the opt-out deadline, the Settlement Administrator will provide Class Counsel and Converse's counsel a declaration, which includes a statement of due diligence and proof of mailing of Class Notice to the Class Members, and a statement of the number of opt-outs and objections received.  (Id. ¶ 43.)  Class Counsel shall provide this information to the Court as part of the motion for final approval of the Agreement.

The Court notes that the Agreement lists Lonnie C. Blanchard III, Peter R. Dion-Kindem, and Jeff Holmes as Class Counsel, but the Class Notice does not include Mr. Holmes, nor does Mr. Holmes name appear anywhere else in the Motion.  (Agreement ¶ 5; Class Notice at 8.)  Therefore, the parties should revise the Agreement to remove Mr. Holmes's name as Class Counsel.

## IV.  CONDITIONAL CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS

The parties seek certification of the proposed settlement class for purposes of the Agreement.  (Mot. at 13.)  The Court first addresses the Rule 23(a) requirements and then turns to the Rule 23(b) requirements.

### C.  Requirements of Rule 23(a)

#### 1.  Numerosity

A class satisfies the prerequisite of numerosity if it is so large that joinder of all class members is impracticable.  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).  To be impracticable, joinder must be difficult or inconvenient, but need not be impossible.  Keegan v. Am. Honda Motor Co., 284 F.R.D. 504, 522 (C.D. Cal. 2012).  There is no numerical cutoff for sufficient numerosity.  Id.  However, 40 or more members will generally satisfy the numerosity requirement.  Id.  A plaintiff has the burden to establish that this requirement is satisfied.  United Steel, Paper & Forestry, Rubber, Mfg. Energy v. Conoco Phillips Co., 593 F.3d 802, 806 (9th Cir. 2010).  Here, Mr. Campos estimates that there are (1) 401 Class Members in the Unpaid Wages Class, and (2) 143 Class Members in the Section 203 Class.  (Suppl. Mem. at 4, 7.)  Accordingly, the Court finds that both classes are sufficiently numerous.

#### 2.  Commonality

The commonality requirement is satisfied when plaintiffs assert claims that "depend upon a common contention … capable of classwide resolution—which means that a determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011).

//

---

Mr. Campos asserts that the following questions of law and fact are common to the respective Class Members:

- <u>Unpaid Wages Class</u>: Whether Defendants paid class members for all hours worked as required by California law for time spent waiting for and giving through mandatory security processes to exit the facility.

- <u>Section 203 Class</u>: Whether Defendants willfully failed to timely pay all wages due to Plaintiff and class members upon the termination of their employment.

(Suppl. Mem. at 4, 7.)  Accordingly, Mr. Campos has established commonality.

### 3.   Typicality

"The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class."  <u>Hanon v. Dataproducts Corp.</u>, 976 F.2d 497, 508 (9th Cir. 1992).  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiff, and whether other class members have been injured by the same course of conduct."  <u>Wolin v. Jaguar Land Rover No. Am.</u>, 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting <u>Hanon</u>, 976 F.2d at 508).  Because typicality is a permissive standard, the claims of the named plaintiff need not be identical to those of the other class members.  <u>Hanlon</u>, 150 F.3d at 1020.

Here, Mr. Campos argues that his claims arise from the same practice and course of conduct as all Class Members:

<u>Unpaid Wages Class</u>: Mr. Campos claims that he, like the putative Class Members, is a non-exempt warehouse worker employed by Converse in one of two facilities in California. (Suppl. Mem. at 4–5.)  He asserts that during the Class Period, Converse implemented uniform and mandatory exit security procedures at those facilities, which required employees to submit to a visual inspection, pat themselves down, and open bags for inspection whenever they exited the facilities.  (<u>Id.</u> at 5.)  Mr. Campos and the putative Class Members were subject to these security procedures when they left to take meal and rest breaks and at the end of their shifts after they had clocked out.  (<u>Id.</u>)  Converse did not compensate Mr. Campos or Class Members for the time spent waiting for and undergoing the security procedures.  (<u>Id.</u>)

<u>Section 203 Class</u>: In addition to the above, Mr. Campos claims that Converse terminated his and the putative Section 203 Class Members' employment and willfully failed to pay them for all outstanding wages for their time.  (<u>Id.</u> at 7–8.)

Accordingly, the Court concludes that Mr. Campos has met the typicality requirement.

//
//

---

### 4. Adequacy

When determining whether a proposed class representative will adequately protect the interests of the class, the court should ask whether the proposed class representative and her counsel have any conflicts of interest with any class member and whether the proposed class representative and his counsel will prosecute the action vigorously on behalf of the class. Johnson v. General Mills, Inc., 275 F.R.D. 282, 288 (C.D. Cal. 2011).

Mr. Campos and his counsel do not have any conflicts of interest with any Class Member. (Dion-Kindem Decl. ¶¶ 10–11; Blanchard Decl. ¶¶ 6–7; Campos Decl. ¶ 2.)  Mr. Campos declares that he understands his role as a fiduciary to Class Members and that he not only considers Class Members' interests as his own but also places their interests before his own. (Campos Decl. ¶¶ 3–4.)  He has spent many hours vigorously prosecuting the action on behalf of Class Members and believes that he has fairly represented their interests.  (Id. ¶¶ 5, 7.)  In addition, Mr. Campos's counsel are experienced in wage and hour litigation, including class actions. (Dion-Kindem Decl. ¶¶ 4–9; Blanchard Decl. ¶¶ 3–5.)  Under these circumstances, the Court finds that Mr. Campos and his counsel will adequately represent the putative Class Members' interests.

## D.  Requirements of Rule 23(b)

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 614 (1997).

Mr. Campos asserts that the Agreement satisfies Rule 23(b)(3).  (Mot. at 16–19.)  Rule 23(b)(3) requires: (1) issues common to the whole class to predominate over individual issues, and (2) that a class action be a superior method of adjudication for the controversy.  Fed. R. Civ. P. 23(b)(3).  The predominance "inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Hanlon, 150 F.3d at 1022 (quoting Amchem, 521 U.S. at 623).  "[T]he examination must rest on 'legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement.'" Id. (same).  A class should not be certified if the issues of the case require separate adjudication of each individual class member's claims.  Id.

A class action must also be superior to other methods of adjudication for resolving the controversy.  Fed. R. Civ. P. 23(b)(3).  To determine superiority, a court's inquiry is guided by the following pertinent factors:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;
(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

---

**CIVIL MINUTES—GENERAL**                    Initials of Deputy Clerk MG

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)–(D).  However, "[confronted] with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial."  Amchem, 521 U.S. at 620.

As discussed above, questions common to the Unpaid Wages Class and Section 203 Class exist.  They present a significant aspect of the case and can be resolved for all Class Members in a single adjudication.  Mr. Campos's and Class Members' claims are susceptible to common proof, which principally focuses on Converse's conduct rather than the behavior of individual Class Members.  (Mot. at 17; Suppl. Mem. at 6–8.)  All Class Members seek damages.  (Dion-Kindem Decl. ¶¶ 13–14.)  Therefore, common questions predominate.

Moreover, Mr. Campos contends that the class mechanism is the most effective method for resolving the claims the Class Members.  He asserts that Class Members do not wish to pursue their claims on an individual basis because the cost of litigation would outpace their potential recovery.  (Mot. at 19; Dion-Kindem Decl. ¶¶ 13–14.)  The putative Class Members, who are hourly employees with limited resources, would find individual litigation difficult and prohibitively expensive and would likely abandon their claims as a result.  (Mot. at 18–19.)  Given the large size of the two proposed Classes, adjudication of Class Members' claims in a single action promotes efficiency and judicial economy.  (Id. at 18.)  Accordingly, the Court finds the superiority requirement has been met.

In sum, the Court concludes that the Unpaid Wages Class and Section 203 Class satisfy the requirements for conditional class certification under Rule 23(a) and Rule 23(b).

## V.   PRELIMINARY APPROVAL OF THE SETTLEMENT

The Court must next determine whether the Agreement "is fundamentally fair, adequate, and reasonable."  Hanlon, 150 F.3d at 1026.  This inquiry involves a number of factors, including "the strength of the plaintiff's case, the risk, expense, complexity, and likely duration of further litigation, the risk of maintaining class action status throughout trial, the amount offered in settlement, the extent of discovery completed, and the stage of the proceedings, the experience and views of counsel, the presence of a governmental participant, and the reaction of the class members to the proposed settlement."  Stanton, 327 F.3d at 959 (internal citations omitted).  The settlement may not be a product of collusion among the negotiating parties.  In re Mego Fin, Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000) (citing Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1290 (9th Cir. 1992)).

//
//

---

"At the preliminary approval stage, some of the factors cannot be fully assessed. Accordingly, a full fairness analysis is unnecessary." Litty v. Merrill Lynch & Co., 2015 WL 4698475, *8 (C.D. Cal. Apr. 27, 2015).  Rather, the court need only decide whether the settlement is potentially fair, Acosta, 243 F.R.D. at 386, in light of the strong judicial policy in favor of settlement of class actions. Class Plaintiffs, 955 F.2d 1276.  "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." Hanlon, 15 F.3d at 1027.

## A. Extent of Discovery and Stage of the Proceedings

For a court to approve a proposed settlement, "[t]he parties must … have engaged in sufficient investigation of the facts to enable the court to intelligently make an appraisal of the settlement." Acosta, 243 F.R.D. at 396 (internal quotation marks omitted).

Prior to settlement, the parties engaged in extensive discovery. (Mot. at 19.)  Converse provided Mr. Campos with extensive payroll and time-keeping data, and Mr. Campos's counsel reviewed and analyzed these documents. (Id.)  Based on this data, the parties estimated Converse's maximum exposure and used that figure to determine the gross settlement amount. (Dion-Kindem Decl. ¶ 40.)  Both parties took depositions—Mr. Campos deposed Converse's Rule 30(b)(6) witness, and Converse deposed Mr. Campos. (Mot. at 20.)  Moreover, the parties conducted a full day of mediation on September 29, 2021 before Steve Ceveris, a well-respected mediator. (Dion-Kindem Decl. ¶ 16.)  Based on these facts, the Court finds that each side maintains a "clear view of the strengths and weaknesses of their [respective] cases," such that this factor weighs in favor of preliminary approval. Lewis v. Starbucks Corp., 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008).

## B. Amount Offered in Settlement

To determine whether the amount offered in settlement is fair, a court compares the settlement amount to the parties' estimates of the maximum amount of damages recoverable in a successful litigation. In re Mego, 213 F.3d at 459.  "'It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair.'" Id. at 459 (quoting Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 628 (9th Cir. 1982)).

The Court finds that the gross settlement amount of $450,000.00 provided in the Agreement is fair and reasonable and provides meaningful relief to Class Members.  To calculate damages, Mr. Campos's counsel assumed maximum exposure and multiplied two minutes (the estimated time spent undergoing Converse's security protocols) by the overtime rate. (Dion-Kindem Decl. ¶¶ 40.)  Based on this calculation and the employee data Converse provided, Mr. Campos's counsel estimated that Mr. Campos's damages were $247,000.00, and that

Converse's maximum exposure for 203 claims[2] was $511,000.00.  (Id.)  The gross settlement amount of $450,000.00 is within the range of potential recovery and reasonable given certain weaknesses and risks in Mr. Campos's case.  (Id.)

## C.  Strength of Case and Risk, Expense, Complexity, and Likely Duration of Litigation

Mr. Campos argues that the value of the Agreement outweighs the risk of proceeding with litigation in light of the challenges to prevailing on his claim.  The case involves complex and disputed legal and factual issues. (Mot. at 21.)  Converse maintains it has a good faith defense and believes it would prevail at the summary judgment stage.  (Id.; Dion-Kindem Decl. ¶ 41.)  Class certification poses additional risks for Mr. Campos.  (Mot. at 21; Dion-Kindem Decl. ¶ 41.)  Mr. Campos further understands that if he loses, he could be ordered to pay Converse's attorney's fees and litigation costs.  (Campos Decl. ¶ 6.)  While Mr. Campos fails to identify the specific weaknesses in his case or what litigation remains, the Court finds that he has somewhat shown that the risk of further litigation weighs in favor of preliminary approval.  However, the Court warns Mr. Campos that he must provide detailed information on the merits of Mr. Campos's and Class Members' claims at the final approval stage.

## D.  Experience and Views of Counsel

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation."  Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 528 (C.D. Cal. 2004) (internal citation and quotation marks omitted).  As noted above, Mr. Campos's counsel holds extensive experience in complex, wage and hour class action litigation in state and federal courts.  (Dion-Kindem Decl. ¶¶ 4–9; Blanchard Decl. ¶¶ 3–5.)  His counsel believes the Agreement is "fair, reasonable, adequate, and is in the best interests of the Class."  (Blanchard Decl. ¶ 2.)  Accordingly, the Court finds this factor weighs in favor of preliminary approval.

## E.  Collusion Between the Parties

"To determine whether there has been any collusion between the parties, courts must evaluate whether 'fees and relief provisions clearly suggest the possibility that class interests gave way to self interests,' thereby raising the possibility that the settlement agreement is the result of overt misconduct by the negotiators or improper incentives for certain class members at the expense of others."  Litty, 2015 WL 4698475, at *10 (quoting Staton, 327 F.3d at 961).

Mr. Campos asserts that the proposed settlement agreement is a result of non-collusive negotiations after the parties conducted a full day of mediation before a well-respected mediator. (Mot. at 19.)  The use of a mediator experienced in the settlement process tends to establish that

---

[2] Mr. Campos's counsel fails to explain why he only estimated damages for 203 claims, rather than the 401 Class Members.  While the Court assumes that he only received information for 203 claims, Mr. Campos should fully explain this figure at the final approval stage.

the settlement process was not collusive.  See, e.g., Satchell v. Fed Ex. Corp., 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007).

The Court also reviews the financial terms of the Agreement.  First, a net settlement amount of $268,500.00 will be distributed among Class Members.  As noted above, one-third of this amount will be allocated to the Unpaid Wages Class, and two-thirds will be allocated to the Section 203 Class.  (Agreement ¶¶ 46.a–b.)  Unpaid Wages Class Members receive a percentage figure based on their hours worked, while Section 203 Class Members receive a pro rata share. (Id.)  While this allocation ultimately seems reasonable, the Court notes that Mr. Campos offers no estimate of Class Members' average recovery or range of recovery.  The Court recommends that Mr. Campos provide this information at the final approval stage.

Second, the Agreement provides a service award of $8,500.00 to Mr. Campos. (Agreement ¶ 48.)  A court may grant a modest incentive award to a class representative, both as an inducement to participate in the suit and as compensation for the time spent in litigation activities.  See In re Mego, 213 F.3d at 463 (finding the district court did not abuse its discretion in awarding an incentive award to the class representatives).  The Court notes that this award is slightly higher than those that other courts have found reasonable.  See, e.g., Urakhchin v. Allianz Asset Mgmt. of Am., L.P., 2018 WL 8334858, at 7–8 (C.D. Cal. July 30, 2018) (approving incentive award of $7,500.00).  The Court is also unable to compare how the service award compares to other Class Members' recoveries.  However, Mr. Campos declares that he has vigorously participated in the litigation.  Though he does not state how many hours he has worked on the case, he has taken the following actions: obtained and communicated with his counsel on many occasions about the case; assisted in gathering information; reviewed documents; provided information for pleadings; assisted in identifying and talking to witnesses; prepared for and attended his deposition; provided information for damages calculations and reviewed those calculations; and signed documents.[3]  (Campos Decl. ¶ 5.)  In addition, Mr. Campos notes that he undertakes risks associated with having a public record that shows he brought a class action for unpaid wages against his former employer.  (Id. ¶ 6.)  The Court preliminarily finds that the class representative award is potentially reasonable.

Finally, the Agreement provides for Mr. Campos's counsel to recover $150,000.00 in attorneys' fees, or one-third of the gross settlement, and $15,000.00 in litigation costs. (Agreement ¶¶ 18.b-c; ¶ 49.)  The requested attorneys' fees exceed the 25% benchmark that courts in the Ninth Circuit generally find reasonable.  Hanlon, 150 F.3d at 1029 ("This circuit has established 25% of the common fund as a benchmark award for attorney fees.").  However, the Court may cross-check the requested fees using the lodestar method.  Fischel v. Equitable Life Assurance Soc'y of U.S., 307 F.3d 997, 1006 (9th Cir. 2002).  The declarations submitted by Mr. Campos's counsel show that they have applied a downward multiplier of nearly fifty percent to reach the requested fee amount.  The Court preliminarily finds that the requested attorney's

---

[3] It is not clear from the Motion whether Mr. Campos participated in the day-long mediation on September 29, 2021.  Mr. Campos should provide this information at the final approval stage.

fee amount is reasonable. However, the Court will further scrutinize counsel's lodestar at the final approval stage, including through any timesheets and evidence to justify the requested hourly rates and analysis of the factors listed in <u>Kerr v. Screen Extras Guild, Inc.</u>, 526 F.2d 67, 69–70 (9th Cir. 1975), <u>abrogated on other grounds by</u> <u>City of Burlington v. Dague</u>, 505 U.S. 557 (1992).[4]  The Court will also consider the reasonableness of the requested costs then.

## F.  Remaining Factors

In addition to the factors discussed above, the Court may consider the presence of a governmental participant and the reaction of the class members to the proposed settlement. <u>Staton</u>, 327 F.3d at 959 (internal citations omitted).  At this stage, the Court cannot fully analyze the remaining factors.  The Class Members have yet to receive notice of the Agreement and have not had an opportunity to comment or object to its terms.  The Court directs Mr. Campos, in the motion for final settlement approval, to provide briefing on these issues.

In sum, the Court concludes that the factors above, on balance, show that the Agreement is potentially fair, adequate, and reasonable and support preliminary approval.

## VI.  CONCLUSION

For the foregoing reasons, the Court GRANTS Mr. Campos's Motion for Preliminary Approval of Class Action Settlement, and VACATES the April 25, 2022 hearing.  The Court ORDERS as follows:

1.  The Settlement Agreement is preliminarily approved as potentially fair, reasonable, and adequate.  However, in their motion for final approval, Mr. Campos shall address the concerns raised above.

2.  The following Settlement Classes are certified for settlement purposes only:

Class 1: Unpaid Wages Class: All non-exempt employees employed by Converse, Inc. at any time of Converse, Inc.'s two warehouse facilities in California at any time during the period beginning four years prior to the date of the filing of this

---

[4] In <u>Kerr</u>, the Ninth Circuit adopted the 12–factor test articulated in <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714 (5th Cir. 1974) which identified the following factors for determining reasonable fees: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. <u>Kerr</u>, 526 F.2d at 70.

action and ending on the date of preliminary approval or as otherwise determined by the Court.

Class 2: Section 203 Class: All members of any of Class 1 who, during the period beginning three years prior to the date of the filing of this action and ending on the date of preliminary approval or as otherwise determined by the Court, were either voluntarily or involuntarily separated from their employment.

3.  The Court appoints Lonnie C. Blanchard III of The Blanchard Law Group, APC and Peter R. Dion-Kindem of Peter R. Dion-Kindem, P.C. to serve as Class Counsel on behalf of the Settlement Classes for purposes of settlement only.

4.  Plaintiff Andres Campos is appointed as the representative of the Settlement Classes for purposes of settlement only.

5.  The Court appoints CPT Group, Inc. as the settlement administrator.

6.  The Class Notice forms are approved with the corrections raised above.

7.  The Court authorizes distribution of Class Notice to the Class Members pursuant to the Agreement.

8.  The hearing date for the Final Fairness Hearing is hereby set for **Monday, August 15, 2022** at 9:00 a.m. in Courtroom 1 of the United States District Court for the Central District of California, Eastern Division located at 3470 12th Street, Riverside, California 92501.


**IT IS SO ORDERED.**